FILED
2026 Jan-27 AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

Pro Se 14 (Rev. 09/16) Complaint for Violation of Civil Rights (Prisoner)

FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

2026 JAN 26 P 2:06

U.S. DISTRICT COURT
N.D. OF ALABAMA

Antwon D. Jenkins
*Plaintiff*
*(Write your full name. No more than one plaintiff may be named in a complaint.)*

-v-

Safariland LLC, et al (United States)
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all of the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here. Your complaint may be brought in this court only if one or more of the named defendants is located within this district.)*

Case No. ____________
*(to be filled in by the Clerk's Office)*

28 USC § 1346 (b)(2)

28 USC § 1367 (a)
(supplemental Jurisdiction)
(Defendant #1)

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee of $400.00 or an Application to Proceed *In Forma Pauperis*.

Mail the original complaint and the filing fee of $400.00 or an Application to Proceed *In Forma Pauperis* to the Clerk of the United States District Court for the Northern District of Alabama, Room 140, Hugo L. Black U.S. Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203-2195.

## I. The Parties to this Complaint

### A. The Plaintiff

Provide the information below for the plaintiff named in the complaint.

| | |
|---|---|
| Name | Antwan D. Jenkins |
| All other names by which you have been known: | N/A |
| ID Number | 09778-025 |
| Current Institution | Forest City Low |
| Address | Po Box 9000 |
| | Forest City (City) AR (State) 72336 (Zip Code) |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Safariland LLC (Corporate Defendant) |
| Job or Title *(if known)* | Manufactor of NIK Drug Test |
| Shield Number | N/A |
| Employer | N/A |
| Address | |
| | Jacksonville (City) Florida (State) N/A (Zip Code) |

☐ Individual Capacity ☐ Official Capacity

Defendant No. 2

| | |
|---|---|
| Name | Mark S. Inch |
| Job or Title *(if known)* | Former Director of FBOP (Nov. 2016 - May 2018) |
| Shield Number | N/A |
| Employer | Federal Bureau of Prisons |
| Address | N/A |
| | N/A (City) N/A (State) N/A (Zip Code) |

☑ Individual Capacity ☑ Official Capacity

Defendant No. 3

Name: Hugh Hurwitz

Job or Title *(if known)*: Former BOP Director (May 2018 - Aug 2019)

Shield Number: N/A

Employer: Federal Bureau of Prisons

Address: N/A

*City* *State* *Zip Code*

☑ Individual Capacity ☑ Official Capacity

Defendant No. 4

Name: John/Jane Doe (Former Ass. BOP Director)

Job or Title *(if known)*: Former FBOP Ass. Director (2016-2018)

Shield Number: N/A

Employer: Federal Bureau of Prisons

Address: N/A

*City* *State* *Zip Code*

☑ Individual Capacity ☑ Official Capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal law]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim) ☑ 28 USC §1346(b)(2)
28 USC § 1367(a) (supplemental jurisdiction)

☐ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities, secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Plaintiff is filing his complaint under 28 USC §1346(b)(2) and 28 USC §1367(a) (supplemental jurisdiction) (as to Defendant # 1)

(5) John/John Doe (Former Ass. BOP Director)
Former FBOP Ass. Director (2018-2019)
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(6) Kevin Schwinn
Chief of Operations, Intelligence Section of BOP Central office
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(7) M. Wade Jenning
Administrator of the Correctional Services Branch of BOP Central office
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(8) Brad Trate
Administrator Correctional Service Branch
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(9) Ian Connors
Administrator National Inmate Appeal
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(10) John/Jane Doe (Former Southeast Regional office Director)
Former Southeast Regional office Director (2016-2018)
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(11) John/Jane Doe (Former Ass. Director Southeast Regional office)
Former Southeast Regional office Ass. Director (2016-2018)
N/A
Federal Bureau of Prisons
Individual ✓ official capacity ✓

12) John/Jane Doe (Former Southeast Regional office CCS (SIA)
Former Southeast Regional office CCS, (SIA) (2016-2018)
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

13) Robert J. Lynn
Former CSS, (SIA) for Western Regional Office
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(14) Glenda Dykes.
Legal Instrument Examiner Southeast Regional office
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(15) E. Slater
Disciplinary Hearing Officer (DHO) Southeast Regional Office
N/A
Federal Bureau of Prisons
N/A
Individual ✓ official capacity ✓

(16) Becky Clay
Former Warden at FCI Talladega
N/A
Federal Bureau of Prisons
N/A
Individual ✓ Official Capacity ✓

(17) Ewell Wayne Harvell
Special Investigative Services at FCI Talladega
N/A
Federal Bureau of Prison
N/A
Individual ✓ official capacity ✓

(18) William Epps, Jr.
Former Lieutenant at FCI Talladega
N/A
Federal Bureau of Prisons
Individual ✓ official Capacity ✓

C. Plaintiffs suing under *Bivens* may only recover for violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

See Memorandum of Law

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Plaintiff is suing under 28 USC § 1346 and 28 USC § 1367(a); (Supplemental Jurisdiction - Defendant # 2)

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial Detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☐ Convicted and sentenced state prisoner
- ☑ Convicted and sentenced federal prisoner
- ☐ Other *(explain)* ______

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

N/A

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

See Memorandum of Law

C. What date and approximate time did the events giving rise to your claim(s) occur?

November 1, 2016 – the present day

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Memorandum of Law

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries in detail.

Plaintiff suffered "mental and emotional injury" in addition to prior injury due to Defendant's "negligence and wrongful act"

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Plaintiff would like be awarded $ 10,000,000 in damages. Additionally, he respectfully asks: (1) The Defendant's provide discovery (internal emails, public communications, and any exculpatory evidence); (2) Cease Defendant's ACTIVE FRAUDULENT CONCEALMENT of information related to Jenkins v. US, 20-cv-01815-CLM-SGC (ND Ala) and Jenkins v. US, 24-13028-C (11th Cir. 2025) and (3) Defendant's cease from "continuing violation" and hinderance in Plaintiff's civil proceeding

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

FCI Talladega and FCC-Forrest City Low

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E. If you did file a grievance:

1. Where did you file the grievance?

Southeast Regional Office

2. What did you claim in your grievance?

BOP staff failed to properly follow the NIK Drug Test instructions

3. What was the result, if any?

Denied

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Plaintiff files grievances and all denied. Plaintiff files a 2241 in the ND Alabama and the incident report was expunged. See Jenkins v. FBOP, 17-cv-1951-AKK-JEO

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

N/A

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

N/A

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

See Exhibit 1 (Administrative Remedies)

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had any cases dismissed based on grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted?

☐ Yes

☑ No

If yes, state which court dismissed your case(s), when this occurred, and attach a copy of the order(s) if possible.

N/A

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☑ Yes

☐ No

B. If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) Antwon Jenkins

   Defendant(s) United States of America

2. Court *(if federal court, name the district; if state court, name the county and State)*.

   US District Court for the Northern District of Alabama

3. Docket or index number

   20-cv-01815-CLM-SGC

4. Name of Judge assigned to your case

   Corey L. Maze

5. Approximate date of filing lawsuit

   October 2020

6. Is the case still pending?

   ☐ Yes

   ☑ No

If no, give the approximate date of disposition. September 6, 2024

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?*

   Judgment was entered in favor of Defendant. Currently pending on appeal

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

Printed Name of Plaintiff: Antwon D. Jenkins

Prison Identification #: 09778-025

Prison Address: FCC-Forest City Low - PO Box 9000

Forest City (*City*) AR (*State*) 72336 (*Zip Code*)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/22/25 (Date)

[signature]

Signature of Plaintiff

# MEMORANDUM OF FACTS

COUNT #1 The Plaintiff argues that the Defendants in this case have ACTIVELY AND FRAUDULENTLY CONCEALED exculpatory information from Plaintiff in a related civil case. See Jenkins v. US, 20-cv-01815-CLM-SGC (ND Ala) and Jenkins v. US, 24-13028-C (11th Cir. 2025) (currently pending).

The Plaintiff will show that Defendants "knowingly and willingly" fraudulently concealed "relevant information" (namely internal emails) that would have supported Plaintiff's civil action (referenced above) claiming BOP staff "failed to follow the instruction for the Narcotics Identification Kit" (1)

On May 13, 2024, a bench trial was held in the above referenced case, before Honorable Judge Corey L. Maze. At trial the BOP called two witness; (1) Euell Wayne Harvell (Special Investigative Services / S.I.S) at FCI Talladega and (2) William Epps, Jr. (Lieutenant / L.T). Additionally, the Plaintiff testified. (20-cv-01815-CLM-SGC - Doc # 98

At no time during the pre-trial, trial, or post-trial proceedings did the BOP or witnesses reveal that Defendant #1 (Safariland LLC) and the BOP's Central Office (Washington D.C), has been communicating via "internal emails", regarding "NIK Test U". According to an internal email labeled "SIS ADVISORY" dated "January 18, 2017", Defendant #1 (Safariland LLC) "informed Central Office Intelligence Section of an update to the reported color results when testing ... NIK Test U-Methamphetamine Reagent-was reported as BROWN ... The color change should have been reported as BURGANDY". See Exhibit A

Additionally, the Plaintiff obtained internal emails from a high ranking Regional Office employee forwarded to "SIS and Captains". These emails indicated that BOP staff should "send this [email] out to your DHO". The Regional Director for "SIA" email states "We have lost too many Incident Reports to appeals based on staff not being certified, i.e. not testing with (Tests) A, Y, and K... If you fail to do any of these steps, the inmate will win his appeal.." See Exhibit B (Jan. 23, 2018); Ex. B-1 (Jan. 25, 2018)

Furthermore, the emails state "so please be sure to communicate with your DHO... Remember we are all on one team... But lets not let the inmates beat us based on technicalities" id. This email indicates that BOP staff was encouraging "ex parte communication", with the DHO and other executive staff. Inmates are assured an "impartial" tribunal in the DHO setting.

PLAINTIFF'S DECEMBER 17, 2025 DISCOVERY OF DEFENDANTS 2017 AND 2018 INTERNAL EMAILS

Plaintiff argues that the Defendant's "fraudulent concealment" of the "internal emails" and "other potential exculpatory evidence" constitutes a "continuing violation". Plaintiff invokes "Alabama §6-2-3", which provides "equitable tolling" from the two year statute of limitations in Alabama.

On December 17, 2025, the Plaintiff received the internal emails via certified US Postal Service. See Exhibit C. As argued above the actions began on November 1, 2016. His civil trial took place on May 14, 2024. His appeal is currently pending before the Eleventh Circuit. At no time did the Defendant reveal the 2017 or 2018 emails.

## PROCEDURAL HISTORY AND BACK-GROUND OF 20-CV-01815-CLM-SGC

The following facts are from Jenkins v. US, 20-CV-01815-CLM-SGC; Doc# 105

* Plaintiff was incarcerated at FCI Talladega in Alabama

* On November 1, 2016, Correctional Officer (C/O) Taylor Green performed a random pat search of Plaintiff. The search revealed a "brown piece of paper covered in Vaseline". Later that day SIS Evan Wayne Harvell tested the brown paper using the NIK Drug Kit. Harvell "alleges" the brown paper tested positive for "amphetamines" after using Test A and U.

* Plaintiff was given an incident report and placed in the Special Housing Unit (SHU) for 45 days.

* While in the SHU the Plaintiff complained to numerous BOP employees. He was informed to "go through the process".

* Plaintiff was placed in a cell in the SHU that was: (1) 90 degrees; (2) Did not have a way to flush the toilet, so human waste would remain for 3 to 4 days at a time before an officer flushed it. Plaintiff contracted STAPH infection on his face and suffered two severe asthma attacks.

* Plaintiff was released from the SHU on December 15, 2016. After his release he sent several electronic emails to BOP staff.

* Plaintiff files an administrative Remedy to the Southeast Regional office and BOP Central office. Both appeals were denied.

* Plaintiff filed a 2241 in the Northern District of Alabama arguing that the BOP: (1) Did not administer the NIK test properly; (2) The NIK test is unreliable; and (3) As a result the evidence was insufficient. See Jenkins v. FBOP, 17-cv-1951-AKK-JEO (ND Ala). The BOP expunged his sanction on "December 14, 2017".

* On July 17, 2019, the Plaintiff files a tort claim (TSER-2019-07101) with the Southeast Regional Office. He argued: (1) BOP staff intentionally and willfully administering the NIK drug test, without following the directions; (2) While in the SHU, Plaintiff suffered two asthma attacks, lived in a cell with human waste.

* On November 16, 2020, Plaintiff filed a tort claim in the US District Court for the Northern District of Alabama. See Jenkins v. US, 20-cv-01815-CLM-SGC, Doc # 1. He raised two grounds: (1) prison officials intentionally disregarded the results of the NIK drug test for the presence of amphetamines, resulting in his unjustified placement in the SHU; and (2) BOP staff provided him with inadequate medical care and permitted unsanitary conditions in the SHU.

* After several pre-trial motions, the Court dismissed plaintiff's second ground regarding inadequate medical care.

* On May 13, 2024, the Court held a bench trial. The Plaintiff was appointed an attorney and raised the following arguments: (1) NIK Drug Test prohibits testing BROWN PAPER; (2) Testy

is not the correct test for screening Amphetamines; (3) NIK instructs to use Test A then Test U to determine "Amphetamines Type Compound"; (3) Foot Note 2 of the NIK drug test indicates "Red in Test U alone does NOT indicate amphetamines-type compound"; (4) BOP staff was supposed to use Test A, I, and W to screen for Amphetamines; and (5) BOP staff should have conducted further testing.

* Defendant # 17 (Even Wayne Harvell) and Defendant # 18 (William Epps Jr.) both testified at Plaintiff's trial.

* On September 6, 2024, the district court dismissed Plaintiff's complaint with prejudice. The Court adopted the BOP's arguments: (1) BOP staff was permitted to use BROWN Paper; (2) Footnote 2 confirms that Test U's results were sufficient; (3) SIS Harvell was correct in not using Test I and W; (4) BOP staff was correct in rejecting further testing.

* The Plaintiff filed a timely notice of appeal with the Eleventh Circuit Court of Appeals, which is currently pending briefing. See Jenkins v. US, 24-13028-C.

## BOP'S FRAUDULENT CONCEALMENT OF INTERNAL EMAILS

As argued above the Defendants in this case "willfully and knowingly" FRAUDULENTLY CONCEALED the "January 18, 2017 SIS ADVISORY" (internal email), "January 23, 2018 (internal email), and "January 25, 2018 (internal email)".

The "SIS Advisory" was issued on January 18, 2017, while Plaintiff was seeking to obtain "expungment via the administrative remedy process". During this time the Plaintiff wrote a letter to the Southeast Regional office seeking to "submit in 88445-R3 (incident report) an addendum of exhibits, that were recieved after [his] inital filing..." See Exhibit D (Plaintiff's February 8, 2017 letter to Southeast Regional office)

On February 21, 2017, the Plaintiff filed a letter with the BOP Central Office seeking to "supplement [his] argument to include... exhibits [NIK drug test instructions]... [the Regional office] denied [his appeal] two days earlier (February 6, 2017)... [Plaintiff] also included electronic emails, that [he] sent to the Captain and Warden..." See Exhibit D-1 (Plaintiff's February 21, 2017 letter to BOP Central Office).

On February 10, 2017, the Plaintiff sent an electronic email to Defendant #16 (Former Warden Becky Clay), informing her of my concern with Test U being utilized to indicate Amphetamines. The Plaintiff asked to "place on hold all of the past and pending sanctions issued from NIK test result". Plaintiff also emailed the Assistance Warden and Captain. See Exhibit D-2 (Plaintiff's February 10, 2017 email to Warden)

On December 14, 2017, Defendant #9 (Ian Connors - Administrator of National Inmate Appeals), expunged Plaintiff's "Incident Report 2913345), but did not mention the "January 18, 2017 SIS Advisory" and whether it was the basis for expungement. See Exhibit D-3 (Plaintiff's December 18, 2017 expungment "#88445-A2)

On December 18, 2017, Defendant #14 (Glenda Dykes Legal Instruments Examiner FBOP Southeast Region Office) files a declaration in Jenkins v. FBOP, 17-cv-1951-AKK-JEO (ND Ala), indicating that Plaintiff's "DHO's record for incident report #2913345 has been expunged". She fails to mention the "January 18, 2017 SIS Advisory" and whether it was the basis for expungment. See Exhibit D-4 (Glenda Dykes December 18, 2017 Declaration)

On July 24, 2019, the Southeast Regional Office recieved Plaintiff's "Form 95 tort claim" regarding his unlawful placement in the SHU. The BOP Southeast Regional Office denied Plaintiff's tort request and did not consider or reveal the "SIS Advisory from January 18, 2017). See Exhibit D-5 (Plaintiff's July 17, 2019 Form 95 #TSER-2019-07101)

On November 16, 2020, Plaintiff files a tort claim against numerous BOP employees. See Jenkins v. US, 20-cv-01815-CLM-SGC. Doc #1. At no time during the pre-trial proceedings did the BOP, AUSA John Saxton, AUSA Jack Hood or AUSA Grace J. Posey, reveal the presence of the "January 18, 2017 SIS Advisory". The BOP and AUSAs files a host of motions to dismiss and summary judgment, but specifically failed to mention the internal email from BOP Central Office. See 20-cv-01815-CLM-SGC - Doc # 17, 32.

On December 14, 2023, the district court appointed Plaintiff an attorney (Kira Y. Fontenean). See Doc# 52 and 53. Plaintiff's attorney immediately file a "motion for discovery". Doc# 55 The BOP files a motion in "opposition" of discovery. Doc# 56 IT IS IMPORTANT TO NOTE THAT WHILE PLAINTIFF WAS PRO-SE, THE BOP DID NOT PROVIDE ANY DISCOVERY!

On February 7, 2024, the district court granted in part and denied in part, Plaintiff's request for discovery. Doc# 69 The court permitted "limited discovery". id. The BOP nor AUSAS did not reveal any knowledge regarding the "January 18, 2017 SIS Advisory".

On May 13, 2024, the district court held a bench trial. The Plaintiff called three witnesses: (1) Defendant # 17 (Enell Wayne Harvell); (2) Defendant # 18 (William Epps Jr.); and Antwon D. Jenkins (Plaintiff). Doc # 98. Defendant # 17 and # 18 testified and was questioned at length regarding NIK Test Y. At no time did either Defendant inform the Court of the "January 18, 2017 SIS Advisory". id at p. 29 – 93 (Defendant # 17 – Harvell); see also id at p. 94 – 113 (Defendant # 18 – Epps)

During trial testimony Defendant # 17, testified about "a lot of testing done at the Bureau of Prisons... throughout the whole Bureau of Prisons because of the epidemic of the K/2 Spice and other drugs that were coming in on paper...". Doc # 98 at p. 34 Additionally, Defendant # 17 testified that the NIK Drug Test is "the only thing that the Bureau of Prisons / Department of Justice allows us to buy". id at p. 36 para 12-13.

At Plaintiff's trial Defendant # 18 (William Epps Jr.) testified at length about his job as a SIS Lieutenant at FCI Talladega. He also noted that "NIK test... has been adopted by the Bureau of Prisons". Doc # 98 p. 100 para 16-21. At no time did he reveal the "January 18, 2017 SIS Advisory".

The Plaintiff's case is currently pending before the Eleventh Circuit Court of Appeals. See Jenkins v. US, 24-13028-C (11th Cir. 2025) Plaintiff was denied the opportunity to obtain the "January 18, 2017 SIS Advisory" and present evidence related to its contents.

## THE IMPACT OF THE INTERNAL EMAILS

The Plaintiff argues the internal email have a greater impact then just the Defendants fraudulent concealment. The Defendant was denied the opportunity to a meaningful legal proceeding.

The January 18, 2017 SIS Advisory

As argued above on January 18, 2017, Defendant # 7 (M. Wade Jennings) issued a "SIS Advisory" to "All Regional Directors", "All Wardens", "All Special Investigative Services (SIS) personnel", "All Correctional Services staff" and "BOP Central Office Department". See Exhibit A. So, this memo was delivered to Defendants # 9-18.

Defendent's # 2 (Mark S. Inch), # 3 (Hugh Hurwitz), # 4 (John/Jane Doe - Former Ass. BOP Director), and # 5 (John/Jane Doe - Former Ass. BOP Director 2018-2019), either directly approved the "SIS Advisory" or had knowledge of it.

On January 18, 2017, the "SIS Advisory" was co-signed by Defendant #6 (Kevin Schwinn - Chief of Operation, Intelligence Section of BOP Central Office and approved by Defendant # 8 (Brad Trate - Administrator Correctional Services Branch). Both Defendants were fully aware of the document.

According to Defendant #7 (M. Wade Jenning) in the "January 18, 2017 - SIS Advisory":

"This is an update to the SIS Advisory dated September 29, 2015 ... The SAFARILAND Company has informed Central Office Intelligence Section of an update to the reported color results when testing for Buprenorphine HCL ... In the September 29, 2015 SIS Advisory, the color change in NIK Test U - Methamphetamine Reagent - was reported as BROWN .... The color change should have been reported as BURGANDY ... THE SPECIAL INVESTIGATIVE SUPERVISORS (SIS) ARE ASKED TO ADVISE THE STAFF OF THE INFORMATION CONTAINED IN THIS ALERT". See Exhibit A.

The Plaintiff argues that:

* He did not have the opportunity to review "SIS Advisory - September 29, 2015" regarding Defendant # 1 (Safariland LLC) communications with BOP Central Office and internal emails from Defendant # 1 to BOP staff regarding the color change in NIK Test U.

* According to the NIK Drug test Instruction NIK, Test U is designed for "Methamphetamines and MDMA (Ecstacy)". See Exhibit E (Safariland NIK Drug Test Instructions). And the instruction state that "Test U" tells us "if there is an indication of Amphetamine (burgundy) or Methamphetamine (dark blue). See Exhibit E-1. In Plaintiff's eyes there is NO WAY, the BOP should have been utilizing Test U for "Buprenorphine HLC (Suboxone)".

* Prior to September 29, 2015, Defendant #1 communicates with BOP Central Office regarding "Test U" and indicated that "the color change in NIK Test U – Methamphetamine Reagent – was reported BROWN... the color should have been reported as BURGANDY". See Exhibit A

* Plaintiff did not have an opportunity to review the "internal mails" between Defendant #1 and BOP Central office, where Defendant #1 indicates that the "color change in NIK Test U – Methamphetamine Reagent – was reported as BROWN". See Exhibit A

* Prior to January 18, 2017 (SIS Advisory) and begining on or about September 29, 2015, Defendant #1 did the following: (1) Knowingly and Willingly informed BOP Central Office to "falsify" NIK Test U results (i.e Test U – Methamphetamine Reagent – as "BROWN" instead of "BURGANDY"); (2) BOP Central Office Knowing and willingly instructed BOP staff "falsify" test results via "September 29, 2015 – SIS Advisory"; and; (3) BOP employee followed this directive.

* As argued above, the Defendants fraudulently concealed these facts.

Western Regional Office,
CCS (SIA) Robert J.
Lyon's "ONE TEAM"
January 23 and 25, 2018
"internal email"

* On January 23, 2018, Defendant # 13 (Robert J. Lyon - Western Regional Special Investigative Agent) issued an internal email addressed to "Captains, WXR, SIA, SIS LT and Correctional Services". Defendant # 13, was forwarding his perspective on the "January 18, 2017 - SIS Advisory". See Exhibit B

* Defendant # 13 email states:

"We have lost too many Incident Reports to appeals based on staff not being certified.... not testing with (Tests) A, U, and K.... If you fail to do any of these steps, the inmate will win his appeal" id

He continues with:

"Please be sure to communicate with your DHO... Remember we are all on one team... But not the inmates beat us based on technicalities" id

* These "internal emails" provide a look at the BOP's mindset during the "K-2/spice" epidemic, as Defendant # 17 (Evell Wayne Harvell) testifies at Plaintiff's trial. Supra at 8

* At this time (2016-2018), the BOP: (1) was losing appeals because inmates challenged NIK test reliability; (2) BOP Office of General Counsel (OGC) was pre-coordinating which cases to support before hearing even occurred; and (3) The goal was not accuracy—it was preventing inmates from "winning appeals".

* Defendant # 13's email explicitly instructs SIS staff to engage in "ex parte communication" with DHO.

* On January 25, 2018, Defendant # 13, email to DHO Ismael Hernandez his "SIS directive". Defendant # 13 asks DHO Hernandez to "send this out to your DHOs as follow up", which proves a systematic coordination between SIS and DHO's within the Western Region. See Exhibit B-1

* Plaintiff believes that this was the mindset of BOP employees at this time. Discovery would reveal whether the Southeast Regional Office took this same approach. And whether BOP Central Office became aware of these emails.

## DEFENDANT #2 AND BOP'S SHELL GAME WITH BURGUNDY IN TEST U

As argued above Defendant #2's language ("amines" v. "secondary amines") and a tiny-footnote disclaimer ("Red in Test U alone is not a positive") are drafted to preserve corporate deniability, while guaranteeing confusion among line officers, DHOs, and courts:

* Defendant #2 and BOP have roughly for fifteen years, jointly exploited that ambiguity to mislabel baseline burgundy as a "positive" in prison settings where inmates cannot secure confirmatory lab testing.

* Footnote 2 of the Identidrug chart states that only after Test A goes from orange to brown and Test U turns [blue] can the tester "presumptively identify the substance as amphetamine-type compound", and that "Red in Test U alone does NOT indicate amphetamine-type compounds":

* The instructions state:

> "Test A (if it shifts from Orange to Brown) tells us that the substance is either Amphetamines or Methamphetamines.... Test U then tells us if we have Amphetamines (primary amine / burgundy) or Methamphetamine (secondary / dark blue) is present.... BY NOT TURNING DARK BLUE AND STAYING BURGANDY, THIS IS CONSIDERED A NEGATIVE REACTION FOR THE PRESENCE OF A SECONDARY AMINE (METHAMPHETAMINE)...."

See Exhibit E-1

Burgundy in Test U is a negative for methamphetamines NOT A POSITIVE for Amphetamines.

As mentioned above (Supra 14) "Red in Test U alone does NOT indicate amphetamine-type compounds" and "BY NOT TURNING DARK BLUE AND STAYING BURGANDY, THIS IS CONSIDERED A NEGATIVE REACTION FOR THE PRESENCE OF SECONDARY AMINE (METHAMPHETAMINES)".

* It confirms that even under BOP-endorsed training, burgundy in Test U is explicitly described as a negative for methamphetamine (the very drug BOP claimed to be "confirming" in Plaintiff's disciplinary case)

* It exposes Defendant # 1 (Safariland LLC)'s language game: burgundy is labeled "amphetamine (primary amine)" while blue is labeled "methamphetamine (secondary amine)". To a lay DHO or Article III judge, "amphetamines" and "secondary amines" all sounds like narcotics; in chemistry, "amines" is simply a broad functional group that includes countless benign substances.

* The Identidrug chart contains a "critical disclaimer" in very small font, flagged by an asterisk: "Red in Test U alone does NOT indicate amphetamine-type compounds".

* Meanwhile, Defendant # 1 (Safariland), privately trains BOP staff that burgundy = "amphetamine" while publicly preserving a footnote that can be wielded in later lawsuits to claim that any misuse was the user's fault

Exhibit 4

BP-A02882 **INCIDENT REPORT** CDFRM
AUG 11

**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

**Part I - Incident Report**

1. Institution: **FCI Talladega, Alabama**

| 2. Inmate's Name | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| **Jenkins, Antwon** | **09778-025** | **November 1, 2016** | **6:05 pm (APPROX)** |

| 6. Place of Incident | 7. Assignment | 8. Unit |
|---|---|---|
| **By the double gates on the compound at recreation yard** | **U TEXT 7** | **Sigma A Cell S01-009U** |

| 9. Incident: | 10. Prohibited Act Code(s) |
|---|---|
| **Possession of any Narcotic** | **113** |

11. Description Of Incident (Date: November 1, 2016 Time: 6:05 pm Staff became aware of incident)
**On November 1, 2016 at approximately 6:05 pm, Staff conducted a random pat search of inmate Jenkins, Antwon, Reg. No. 09778-025, and found a brown piece of paper that was soaked in some type of substance. Staff took the brown paper to SIS office. I tested the brown paper, first using the NIK field test kit "A". I observed an initial color of orange which changed to the color brown. Following the "Identidrug" flow chart I proceeded to test kit "U". Test kit "U" yielded a reddish-purple color indicating a positive result for amphetamine.**

| 12. Typed Name/Signature of Reporting Employee | 13. Date And Time |
|---|---|
| W. Harvell, SIS Technician W. Harvell | November 1, 2016/6:36 PM |

| 14. Incident Report Delivered to Above Inmate By (Type. Name/Signature) | 15. Date Incident Report Delivered | 16. Time Incident Report Delivered |
|---|---|---|
| [signature] | 11/1/16 | 7:25pm |

**Part II - Committee Action**

17. Comments of Inmate to Committee Regarding Above Incident

18. A. It is the finding of the committee that you:
_____ Committed the Prohibited Act as charged.
_____ Did not Commit a Prohibited Act.
_____ Committed Prohibited Act Code(s) _____

B. ___ The Committee is referring the Charge(s) to the DHO for further Hearing.
C. ___ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

21. Date And Time Of Action _____ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

Chairman (Typed Name/Signature) Member (Typed Name) Member (Typed Name)

INSTRUCTIONS: All items outside heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided staff.
Distribute: ORIGINAL-Central File record; COPY-1- DHO; COPY-2- Inmate After UDC Action; COPY-3- Inmate within 24 hours of Part I Preparation.

BP-A0294 **Notice of Discipline Hearing Before the (DHO)** CDFRM
AUG 11
**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

FCI Talladega, Alabama
Institution

November 8, 2016
Date

| | |
|---|---|
| TO: Jenkins, Antwon D | REG. NO. 09778-025 |
| ALLEGED VIOLATION(S): Possession of drugs/alcohol | |
| DATE OF OFFENSE: November 1, 2016 | CODE NO. 113 |

You are being referred to the DHO for the above charge(s).

The hearing will be held on: Next Available Docket at __________(A.M./P.M.) at the following location:

________________________________________.

You are entitled to have a full-time staff member represent you at the hearing. Please indicate below whether you desire to have a staff representative, and if so, his or her name.

I (do)____ (do not) __X__ wish to have a staff representative.

If so, the staff representative's name is:______________________________

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety. Names of witnesses you wish to call should be listed below. Briefly state to what each proposed witness would be able to testify.

I (do) X___ (do not) _____ wish to have witnesses.

| | |
|---|---|
| NAME: Lett, Perry 15362-002 | CAN TESTIFY TO: Saw the entire shakedown take place; knows I had Vaseline |
| NAME:LeFlore, Tony 14954-002 | CAN TESTIFY TO: He was 2 ft. away when I was searched |
| NAME: Marshall, Robert 14029-002 | CAN TESTIFY TO: He was 2 ft. away when I was searched |
| NAME: Wess, Genesis 26994-034 | CAN TESTIFY TO: He witnessed me talking with officer Green about the Vaseline. |
| NAME: Wooten, Charles (Reg. No. unknown) Could not locate | CAN TESTIFY TO: He witnessed me talking with officer Green. |
| NAME: Officer Green | CAN TESTIFY TO: Officer who searched me stated I still had the same brown paper with Vaseline as earlier that day. |
| NAME: Officer Sanders | CAN TESTIFY TO: Witnessed me possess Vaseline in Lt. Office, "same as tested". |
| NAME: William, Epps | CAN TESTIFY TO: Witnessed officer Green find the brown paper with Vaseline on it, but throw it away. |

BP-A0304
AUG 11

# DISCIPLINE HEARING OFFICER REPORT

CDFRM

U.S. DEPARTMENT OF JUSTICE 2913345 FEDERAL BUREAU OF PRISONS

Institution: FCI TALLADEGA
Institution Security Level: MEDIUM
NAME OF INMATE: JENKINS, ANTWON
REG.NO.: 09778-025 UNIT: SIGMA
Date of Incident Report: 11-01-16
Offense Code: 113
Date of Incident: 11-01-16
Summary of Charges:
POSSESSION OF NARCOTICS

I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) 11-01-16 at (time) 1925 HRS (by staff member) W. EPPS

B. The DHO Hearing was held on (date) 11-14-16 at (time) 0948 HRS

C. The inmate was advised of the rights before the DHO by (staff member): R. HARDIN on (date) 11-12-16 and a copy of the advisement of rights form is Attached.

II. STAFF REPRESENTATIVE

A. Inmate waived right to staff representative. Yes XX No ____.

B. Inmate requested staff representative and N/A appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: N/A

D. Staff representative N/A was appointed.

III. PRESENTATION OF EVIDENCE

A. Inmate ___ (admits) (denies) XX the charge(s).

B. Summary of inmate statement:
Inmate Jenkins stated the paper had vasoline on it. I gave the officer the Paper and he asked my name. He asked me later if it was drugs on the paper. You also presented to the DHO a handwritten document that states the paper had vasoline on it. You stated staff threw one of the papers away after they verified it was vasoline. You requested that the paper be retested at an outside facility. You challenged the NIK tests as not reliable.

C. Witnesses:
1. The inmate requested witnesses. Yes ____ No XX.

2. The following persons were called as witness at this hearing and appeared: Lett 15362-002 stated you took a piece of paper that had vasoline on it. When questioned about how he knew it was vasoline he stated he had not seen you put vasoline on paper. Leflore 14954-002 stated the officer searched you and found a brown paper that had vasoline on it. When questioned about how he knew it was vasoline he stated he had not seen you put vasoline on paper. Marshall 14029-002 stated I saw staff search him he had a piece of paper with vasoline on it he puts it on his lips. When questioned about how he knew it was vasoline he stated he had not seen you put vasoline on paper. Wess 26994-034 stated he's my Christain brother he normally has vasoline on paper when questioned about how he knew it was vasoline he stated he had not seen you put vasoline on paper. Inmate Wooten 48705-004 stated you had paper with vasoline on it. When questioned about how he knew it was vasoline he stated he had not seen you put vasoline on paper.

3. A summary of the testimony of each witness is attached N/A.

4. The following persons requested were not called for the reason(s) given: N/A.

5. Unavailable witnesses were requested to submit written statements and those statements received were considered N/A.

BP-A0304
AUG 11

# DISCIPLINE HEARING OFFICER REPORT CDFRM

U.S. DEPARTMENT OF JUSTICE 2913345 FEDERAL BUREAU OF PRISONS

| Name of Inmate: | Reg. No.: | Hearing Date: |
|---|---|---|
| JENKINS, ANTWON | 09778-025 | 11-14-16 |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

*Photographs of paper and NIK "A and NIK "U""

*memorandum provided by S. Taylor-Green, Correctional Officer

*Handwritten document presented by inmate

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because: N/A

IV. FINDINGS OF THE DHO

__XX__ A. The act was committed as charged.

_______ B. The following act was committed:

_______ C. No prohibited act was committed: Expunge according to Inmate Discipline PS.

BP-A0304
AUG 11

# DISCIPLINE HEARING OFFICER REPORT CDFRM

U.S. DEPARTMENT OF JUSTICE 2913345 FEDERAL BUREAU OF PRISONS

| Name of Inmate: | Reg. No.: | Hearing Date: |
|---|---|---|
| JENKINS, ANTWON | 09778-025 | 11-14-16 |

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.): Your due process rights were read and reviewed with you by the DHO at the time of this hearing. You stated that you understood your rights, and presented no documentary evidence at this time. You called five witnesses who were present.

The DHO finds that on November 01, 2016, you committed the prohibited act of possession of narcotics, Code 113. The specific evidence relied upon includes the statement of the reporting officer. W. Harvell stated On November 1, 2016 at approximately 6:05 pm. Staff conducted a random pat search of inmate Jenkins. Antwon. Reg. No. 09778-025, and found a brown piece of paper that was soaked in some type of substance. Staff took the brown paper to SIS office. I tested the brown paper, first using the NIK field test KIT "A". I observed an initial color of orange which changed to the color brown. Following the 11 Identidrug flow chart I proceeded to test kit "U". Test kit "U" yielded a reddish-purple color indicating a positive for amphetamine.

The DHO considered the photographs of the brown paper and the NIK "A" and "U". The tests are positive.

The DHO considered the memorandum provided by S. Taylor-Green in this document he states On November 1, 2016 at approximately 6:05 pm, I conducted a random pat search of inmate Jenkins, Antwon, Reg. No.09778-025, and found a brown piece of paper that was soaked in some type of substance. I took the brown paper to SIS office.

The DHO could not assign any weight to your witness statements as they could not say that they saw you put vasoline on this paper.

You appeared before the DHO and the DHO read the incident report aloud to you. You then stated the paper had vasoline on it. I gave the officer the outer Paper and he asked my name. He asked me later if it was drugs on the paper. You also presented to the DHO a handwritten document that states the paper had vasoline on it. You stated staff threw one of the papers away after they verified it was vasoline. You requested that the paper be retested at an outside facility. You challenged the validity NIK tests as not reliable.

The DHO considered your statement and defense for the charge and can't ignore the positive NIK tests. Although you claim this substance was vasoline you have provided no documents or evidence to substantiate this. Staff, are not required to send the substance out for retesting. The NIK test kits are accepted as valid by central office and the test results according to the poly-testing chart is accurate.

Therefore, based on the evidence outlined above, the DHO finds the greater weight of the evidence to show you committed the prohibited act of possession of Narcotics, or related drug paraphernalia, Code 113.

VI. SANCTION OR ACTION TAKEN:

DS 30
DIS GCT 41
LP VISIT 6 MONTHS RESTORE 05-13-2017 FOLLOWED BY
LP VISITRS 6 MONTHS START 05-13-2017 END 11-13-2017 IMMEDIATE FAMILY ONLY.

OFFENSE SEVERITY GREATEST
SGT AVAILABLE N/A

BP-A0304
AUG 11

# DISCIPLINE HEARING OFFICER REPORT

CDFRM

U.S. DEPARTMENT OF JUSTICE 2913345 FEDERAL BUREAU OF PRISONS

| Name of Inmate: | Reg. No.: | Hearing Date: |
|---|---|---|
| JENKINS, ANTWON | 09778-025 | 11-14-16 |

VII. REASON FOR SANCTION OR ACTION TAKEN: THE ACTION/BEHAVIOR OF ANY INMATE TO BE IN POSSESSION OF NARCOTICS, OR RELATED PARAPHERNALIA THREATENS NOT ONLY THE HEALTH, SAFETY AND WELFARE OF HIMSELF BUT THAT OF OTHER INMATES AND STAFF WITHIN THE INSTITUTION. YOUR BAHAVIOR/ACTIONS JEPARDIZE THE SAFE AND ORDERLY RUNNING OF THE INSTITUTION.

THE DISCIPLINARY SEGREGATION SANCTION WAS IMPOSED AS PUNISHMENT FOR YOUR ACTIONS BEHAVIOR. THE DISALLOWANCE OF GOOD CONDUCT TIME WAS IMPOSED TO COMPLY WITH MANDATORY SANCTIONING GUIDELINES FOR PLRA inmates. ALTHOUGH THE LOSS OF PRIVILEGE VISITING AND NO CONTACT VISITING IS NOT DIRECTLY RELATED TO THIS ACT THE DHO IMPOSED THESE SANCTIONS BECAUSE YOUR ACTIONS/BEHAVIOR WARRANTED GREATER SANCTIONS TO DEMONSTRATE THE SERIOUSNESS OF THE ACT.

VIII. APPEAL RIGHTS: X The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

IX. Discipline Hearing Officer

| Printed Name | Signature | Date |
|---|---|---|
| E. Slater, DHO | E Slater | Date 11-15-2016 |

Delivered to Inmate: M Noltrott

DATE: 11-17-2016 TIME 8:05 A.M.

Prescribed by P5270

Replaces BP-304(52) of JAN 88

U.S. Department of Justice

Federal Bureau of Prisons

## Regional Administrative Remedy Appeal

12-28-16

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: Jenkins, Antwon | 09778-025 | Sigma A | FCI Talladege |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

I am appealing the DHO's findings wherein I have been accused of violating Code 113. The DHO made several errors in this case which erroneously led her to find me guilty.

As for DHO errors, testimony from the disciplinary hearing revealed three things: (1) I possessed brown paper with vasoline on it; (2) I was in possession of vasoline on the day of the incident; and (3) I had grease stains on my pants pocket.

I testified at the hearing that once I was searched in the Lieutenant's Office, that I was in possession of brown paper with vasoline on it. The Lt. ordered Officers to throw it away over my objection. The Lt. and others were not available to be called as witnesses due to their schedules.

I now argue that a "reasonable inference" could have been drawn from the testimony provided because it calls into question the test results. The DHO committed error in disregarding said testimony of material witnesses. A Due Process violation.

(See Continued)

12-28-16
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: ____________

**Part C - RECEIPT**

CASE NUMBER: ____________

Return to: ____________

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: ____________

REGIONAL ADMINISTRATIVE REMEDY APPEAL

The NIK Test is unreliable. The reliability of the NIK field test has been at the center of numerous legal disputes. See, FBOP v. Henson, 213 F.3d 897 (5th Cir. 2000); Lamping v. Walraven, 30 Fed. Appx (6th Cir. 2002); Terry v. Dept. of Public Safety & Corr. Services, 2012 U.S. Dist. LEXIS 90715 (Md.)(tested positive for "amphetamines" but contradicted by outside lab); Peer v.Denham, 2015 U.S. Dist. LEXIS 127706 (N.D. Col.)(dietary supplement tested positive for "amphetamines" contradicted by outside lab); Bolanus v. Coughlin, 1993 U.S. Dist. LEXIS 21212 (S.D. NY)(tested positive for "cocaine" contradicted by outside lab; Morris v. Smith, 2015 U.S. Dist LEXIS 180682 (N.D. NY)(results contradicted by outside lab); Partak v. Behrle, 2011 U.S. Dist. LEXIS 154410 (N.D. NY)(Ajax cleaning solution tested positive for "cocaine"); Gorreal v. Haynes, 2012 U.S. Dist. LEXIS 102168 (S.D. Ga)(wrongly convicted in a disciplinary sanction based on FBOP drug test).

A District Court Judge stated: "This field test (NIK) is a "presumptive" test, meaning that a positive result indicating that the substance tested for is probably present. False positives are possible and indeed, are not uncommon." Mata-Gonzalez v. Monica, 2015 U.S. Dist. LEXIS 139419 (Oregon); see also Harmon v. Augur, 768 F.2d 270 (8th Cir. 1985)(holding EMIT test results are 95% accurate).

The Fifth Circuit in FBOP v. Henson, 213 F.3d 897 (5th Cir. 2000) held that "Henson failed to identify reliability or execution problems with the first test" and without the test results, there still was evidence of his guilt. (Henson's admission to smoking, red eyes, and a pipe with residue on it.).

A retest is warranted in this case. Assuming, arguendo, that the NIK Test is unreliable, I am entitled to a retest. This case differs from FBOP v. Henson namely because the only evidence relied upon was the test results. Witness testimony and case law calls into question the accuracy of the NIK Test.

A Hearing Officer's findings "must" be supported "by some evidence in the record." Anderson v. Coleman, 2016 U.S. App. LEXIS 7989 (11th Cir. 2016) (citing Superintendant Mass. Corr. Inst. Walpole v. Hill, 472 U.S. 445, 86 L.Ed 2d 356 (1985). With a history of producing false positives and by being contradicted by outside labs, the NIK Test results cannot constitute the "some evidence" standard in the context of disciplinary hearings. "[A] test which produced frequent incorrect results could fail to constitute "some evidence" under the Hill standard. See also Higgs v. Bland, 888 F.2d 443 (6th Cir. 1989)(citing Superintendent Mass. Corr. Inst. Walpole v. Hill, 472 U.S. 445, 86 L.Ed 2d 356 (1985).

WHEREFORE, based on these premises, I seek the Regional Office's support in disposing of this case. I seek restoration of all of my privileges, for this record to be cleared and my good time restored. I am not guilty of possessing narcotics nor do I use narcotics. If I was indeed guilty of this charge, my test results (urinalysis) would show up on a regular urinalysis for one or several different drugs. My Due Process rights were violated by not sending the sample to an outside laboratory. Thank you for your concern and attention.

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | Jenkins, Antwon | 09778-025 | Sigma A | Talladega FCI |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

I am appealing the Region Office's denial of my Administrative Remedy Appeal. I am appealing the DHO's findings wherein I have been accused of violating Code 113. The FBOP's staff are not administering the NIK Test properly. As a result of those FBOP staff's gross negligence, willful wanton and reckless disregard for the rights of others, I was found guilty of possession of narcotics (amphetamines) even though it was 'brown paper' with Vaseline on it. At the disciplinary hearing, five witnesses testified that (1) I possessed brown paper with vasoline on it, (2) I was in possession of vasoline on the day of the incident; and (3) I had grease stains on my pocket. I testified at the hearing that once I was searched in the Lieutenant's Office, that I was in possession of brown paper with vasoline on it. The Lt. ordered officers to throw it away over my objection. The NIK Polytesting System Identidrug Chart states as follows: "NIK Tests are not designed for use with liquid samples. However, liquids

(see continuation page)

2-21-17
DATE

[signature]
SIGNATURE OF REQUESTOR

**Part B—RESPONSE**

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: ______

**Part C—RECEIPT**

CASE NUMBER: ______

Return to: ______ LAST NAME, FIRST, MIDDLE INITIAL ______ REG. NO. ______ UNIT ______ INSTITUTION

SUBJECT: ______

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

CENTRAL OFFICE ADMINISTRATIVE REMEDY APPEAL CONTINUED

may be tested by placing the tip of an NIK SUBSTANCE LOADING DEVICE or a 1 cm. square (roughly 1/2" square) piece of paper into the liquid. Remove and allow to air dry. Place the dry paper into the test pack and proceed with the test as instructed. THE CHOICE OF PAPER IS CRITICAL. UNSCENTED, UNCOLORED FILTERED PAPER IS IDEAL. NEVER USE BROWN PAPER, HAND TOWELS, OR NEWSPRINT." (See attachment) The NIK instructions also reveal that when using Test U (800-6087) and it results in amphetamines, you must proceed to Test W (800-6088). In Test U, the test results will NEVER be a combination of red and purple (reddish purple)(as resulted in my case). Such results are not sufficient (see attachment). FBOP Staff did not correctly follow the NIK instructions, in regard to the prohibited testing of brown paper, proceeding to Test W after Test U results positive for amphetamines, and concluding that the "reddish purple" results were sufficient. This resulted in a wrongful conviction and placement in the SHU. Such violation of Due Process amounts to "Atypical and Significant Hardship" on an inmate in relation to the ordinary incidents of prison life, also constituting Cruel and Unusual Punishment, in violation of the 8th Amendment.

The NIK Test is unreliable. The reliability ofthe NIK field test has been at the center of numerous legal disputes. See, FBOP v. Henson, 213 F.3d 897 (5th Cir. 2000); Lamping v. Walraven, 30 Fed. Appx (6th Cir. 2002); Terry v. Dept. of Public Safety & Corr. Services, 2012 U.S. Dist. LEXIS 90715 (Md.)(tested positive for amphetamines but contradicted by outside lab); Peer v. Denham, 2015 U.S. Dist. LEXIS 127706 (N.D. Col.)(dietary supplement tested positive for amphetamines contradicted by outside lab.) Bolanis v. Coughlin, 1993 U.S. Dist.LEXIS 21212 (S.D. NY)(tested positive for cocaine contradicted by outside lab; Morris v. Smith, 2015 U.S. Dist. LEXIS 180682 (N.D. NY) (results contradicted by outside lab). Partak v. Behrle, 2011 U.S. Dist. LEXIS 154410 (N.D. NY)(Ajax cleaning solution tested positive for cocaine); Goreal v. Haynes, 2012 U.S. Dist. LEXIS 102168 (S.D. Ga)(wrongly convicted in a disciplinary sanction based on FBOP drug test).

A District Court Judge stated: "This field test (NIK) is a "presumptive" test, meaning that a positive result indicating that the substance tested for is probably present. False positives are possible and indeed, are not uncommon." Mata-Gonzalez v. Monico, 2015 U.S. Dist. LEXIS 139419 (Oregon); alse see Harmon v. Augur, 768 F.2d 270 (8th Cir. 1985)(holding EMIT testresults are 95% accurate). The 5th Circuit in FBOP v. Henson, 213 F.3d 897 (5th Cir. 2000) held that "Henson failed to identify reliability or execution problems with the first test" and without the test results, there was still evidence of his guilt. (Henson's admission to smoking, red eyes, and a pipe with residue on it.).

A retest is warranted in this case. Assuming, arguendo, that the NIK test is unreliable, I am entitled to a retest. This case differs from FBOP v. Henson namely because the only evidence relied upon was the test results. Witness testimony and case law calls into question the accuracy of the NIK test. A Hearing Officer's finding "must" be supported "by some evidence in the record." Anderson v.Coleman, 2016 U.S. App. LEXIS 7989 (11th Cir. 2016)(citing Superintendant Mass. Corr. Inst. Walpole v. Hill, 472 U.S. 445, 86 L.Ed 2d 356 (1985). With a history of producing false positives and by being contradicted by outside labs, the NIK test results cannot constitute the "some evidence" standard in the context of disciplinary hearings, "[A] test which produced frequent incorrect results could fail to constitute "some evidence" under the Hill standard." Wherefore, I seek the Central Office's support in disposing of this case. I seek restoration of all my privileges, for the record to be cleared and my good time restored. My due process rights were violated by not sending the sample to an outside laboratory. Thank you for your concern and attention. Section 4.1.4 General (a) of the NIK Test instructions states: "A statement that the kit is intended to be used for presumptive identification purposes only, and that all substances testedshould be subjected to more definitive examination by qualified scientists in a properly equipped laboratory." (See attachment). See also, Higgs v. Bland, 888 F.2d 443 (6th Cir. 1989)(citing Superintendent Mass. Corr. Inst. Walpole v. Hill, 472 U.S. 445, 86 L.Ed 2d 356 (1985).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTRON D. JENKINS, | ) | |
| Petitioner | ) | |
| v. | ) | Case No. 2:17-CV-1951-AKK-JEO |
| FEDERAL BUREAU OF PRISONS. | ) | |
| Respondent. | ) | |

**DECLARATION OF GLENDA DYKES**

I, the undersigned, Glenda Dykes, do hereby make the following declaration, pertinent to the above styled and numbered case.

1. I am currently employed by the Federal Bureau of Prisons, as a Legal Instruments Examiner in the Southeast Regional Office in Atlanta, Georgia. As a part of my duties, I have access to and knowledge of the computer system known as SENTRY, which contains electronic records for tracking inmates in the federal system, including their Discipline records.

2. I have reviewed the discipline records for Petitioner, Antwon D. Jenkins, federal register number 09778-025. According to SENTRY Petitioner's DHO record for incident report #2913345 has been expunged. Petitioner currently has no DHO history on file.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this 18th day of December 18, 2017.

Glenda Dykes
Legal Instruments Examiner
Federal Bureau of Prisons
Southeast Regional Office
Atlanta, Georgia

Addendum 1 pg 2

**ANTWON D. JENKINS, Petitioner, v. FEDERAL BUREAU OF PRISONS, Respondent.**
**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**
**2018 U.S. Dist. LEXIS 27588**
**2:17-cv-1951-AKK-JEO**
**January 11, 2018, Decided**
**January 11, 2018, Filed**

**Editorial Information: Subsequent History**

Adopted by, Writ of habeas corpus dismissed, As moot **Jenkins** v. Fed. Bureau of Prisons, 2018 U.S. Dist. LEXIS 26607 (N.D. Ala., Feb. 20, 2018)

**Editorial Information: Prior History**

United States v. **Jenkins**, 849 F.3d 390, 2017 U.S. App. LEXIS 3373 (7th Cir. Ill., Feb. 24, 2017)

**Counsel** **Antwon** D **Jenkins**, Petitioner, Pro se, Carmi, IL.
**Judges:** JOHN E. OTT, Chief United States Magistrate Judge.

**Opinion**

**Opinion by:** JOHN E. OTT

**Opinion**

**REPORT AND RECOMMENDATION**

This is an action on a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Petitioner **Antwon** Deshane **Jenkins**, a federal prisoner acting *pro se*. (Doc.1 1). **Jenkins** filed this action to challenge a prison disciplinary action imposed while he was serving out his sentence at the Federal Correctional Institution in Talladega, Alabama ("FCI Talladega"). The cause now comes to be heard for a report and recommendation, *see* 28 U.S.C. § 636(b), Rule 72(b)(1), FED. R. CIV. P., on a motion to dismiss the action as moot, filed by the named respondent, the Federal Bureau of Prisons ("BOP"). (Doc. 3). **Jenkins** has opposed the motion. (Doc. 5). Upon consideration, it will be recommended that the court grant the BOP's motion and dismiss the action as moot.

I.

**Jenkins** is serving a sentence imposed by the United States District Court for the Southern District of Illinois after he was convicted of kidnaping and using or carrying a firearm to commit a crime of violence. *See United States v.* ***Jenkins***, No. 3:12-cr-30239-DRH-1, Doc. 314 (N.D. Ill. September 18, 2015). He was assigned to serve out his sentence at FCI Talladega. Since before filing his petition, however, he has been confined at the White County Jail in Carmi, Illinois. He is in that jurisdiction for the purpose of being re-sentenced after prevailing in an appeal in which the Seventh Circuit invalidated his conviction on the weapons charge. (*See* Doc. 1 at 1; *id.* at 9); *United States v.* ***Jenkins***, 849 F.3d 390 (7th Cir. 2017), cert. petition filed No. 17-97 (July 19, 2017).

The subject of his habeas petition, however, is prison disciplinary action taken before he was brought to Illinois, while he was at FCI Talladega.2 In particular, on November 15, 2016, **Jenkins** was



© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

determined to have been in possession of amphetamine, for which he was placed in segregation for 30 days, lost 41 days of good time, lost 6 months of visitation, "followed by a consecutive loss of visitation [for an additional 6 months]." (Doc. 1 at 2, ¶ 6). After unsuccessfully pursuing administrative remedies (*see id.* at 2-3, ¶¶ 7-8), **Jenkins** filed this *pro se* federal habeas action on November 15, 2017, claiming that his due process rights under the Fifth Amendment were violated in the prison disciplinary proceedings. Specifically, **Jenkins** alleges that the finding of his guilt is based entirely on a "NIK" narcotics identification kit test performed on a piece of brown paper soaked in some substance, which was discovered during a random search of his cell. **Jenkins** asserts that the substance was merely Vaseline petroleum jelly, not amphetamine. He further argues that BOP staff did not administer the NIK test properly; that the NIK test is unreliable generally; and that, as a result, the evidence was insufficient to support that he possessed narcotics. (*See* Doc. 1 at 7-8, ¶ 13; Doc. 1-1); *see also generally Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (due process requires that a decision by a prison disciplinary board to revoke good time credits must be supported by "some evidence from which the conclusion of the administrative tribunal could be deduced"). In his prayer for relief, **Jenkins** asks the court "to expunge his disciplinary sanction, for the record to be cleared and restore his good time credits and visitation." (Doc. 1 at 9, ¶ 15).

After the court issued a show-cause order (Doc. 2), the BOP responded by filing a motion on December 18, 2017, asking the court to dismiss the action as moot. (Doc. 3). In support, the BOP asserts that, on December 14, 2017, it "expunged [Jenkins's] record" with regard to the disciplinary incident in question. (*Id.* at 1). As a result, the BOP says, **Jenkins** now has no adverse disciplinary history on file. (*Id.* at 2). The BOP has submitted documentary evidence corroborating those assertions. (*See* Docs. 3-1, 3-2).

**Jenkins** has filed an opposition to the BOP's motion to dismiss. (Doc. 4). He does not dispute that the discipline has been expunged from his record and that his associated good time credits and visitation rights have thus been restored. Nonetheless, he contends that his case presents an exception to the mootness doctrine, on the theory that the events underlying his habeas claims are capable of repetition, yet evading review. (*Id.* at 1-2).

**II.**

Article III of the Constitution limits the jurisdiction of federal courts to the consideration of "Cases" and "Controversies." U.S. Const. art III, § 2. The Eleventh Circuit has explained:

> The doctrine of mootness derives directly from the case or controversy limitation because "an action that is moot cannot be characterized as an active case or controversy." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969). As this Court has explained, "[p]ut another way, 'a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)). Therefore, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar* [*v.* Ashcroft, 273 F.3d 1330, 1336 (2001)]. In fact, "dismissal is required because mootness is jurisdictional." *Id.* (citing, e.g., *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 30 L. Ed. 2d 413 (1971) ("The question of mootness is ... one which a federal court must resolve before it assumes jurisdiction.")). "Any decision on the merits of a moot case or issue would be an



© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

impermissible advisory opinion." *Florida Ass'n of Rehab. Facilities*, 225 F.3d at 1217.*Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002).

In consideration of the above principles, the BOP's expungement of Jenkins's disciplinary record with regard to the incident, thus restoring his good time credits, means that this court can no longer grant meaningful relief in this habeas corpus action. The office of that writ is limited, generally allowing federal courts to remedy constitutional violations only insofar as the relief might effect an immediate or speedier release from confinement. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005); *Wolff v. McDonnell*, 418 U.S. 539, 553, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); *see also Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979)3 ("[B]ecause the sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose."); *Williams v. Warden*, 2010 U.S. Dist. LEXIS 63637, 2010 WL 2594995, at *1 (N.D. Ga. June 24, 2010) (holding that federal inmate's challenge related to visitation rights did not implicate the fact or duration of his confinement and therefore was not cognizable in federal habeas and could be brought only as a civil rights claim under 42 U.S.C. § 1983), *accord Castillo v. FBOP FCI Fort Dix*, 221 F. App'x 172, 175 (3d Cir. 2007). Indeed, the BOP's action affords **Jenkins** all of the relief he requests in his habeas petition, so his claims are moot. *See Fields v. Flournoy, 2017 U.S. Dist. LEXIS 126310, 2017 WL 3842065, at* *2 (S.D. Ga. Aug. 9, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 142217, 2017 WL 3841476 (S.D. Ga. Sept. 1, 2017); *Willard v. Ciccone*, 507 F.2d 1, 3 (8th Cir. 1974); *Chestnut v. Warden Lewisburg USP*, 592 F. App'x 112, 113 (3d Cir. 2015); *Thomas v. Chester*, 561 F. App'x 656, 657 (10th Cir. 2014); *Yagman v. Thomas*, 612 F. App'x 408, 409 (9th Cir. 2015).

**Jenkins** nevertheless insists that this court may and should hear his claims under an exception to the mootness doctrine applicable when the defendant's action being challenged by the lawsuit is "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982). However, the Eleventh Circuit has emphasized that

> "this exception is 'narrow,' and applies only in 'exceptional situations.'" *Al Najjar*, 273 F.3d at 1336 (quoting *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1256 (11th Cir. 2001)) (internal quotations omitted). In particular, the exception can be invoked only when "(1) there [is] a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Sierra Club v. Martin*, 110 F.3d 1551, 1554 (11th Cir. 1997) (emphasis added). Simply put, "[t]he remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Al Najjar*, 273 F.3d at 1336.*Soliman*, 296 F.3d at 1242-43; *see also Spencer v. Kemna*, 523 U.S. 1, 17-18, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998).

This exception does not apply to Jenkins's petition. As to the first element, **Jenkins** has not established that there is a reasonable expectation that he will be subjected to the very same action again. **Jenkins** does not claim he has a history of similar prison disciplinary actions being taken against him even generally, never mind for narcotics possession based specifically on the BOP's use of the NIK test. So the potential for the same circumstances to arise in another disciplinary action against him is speculative. *See Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985); *Medberry v. Crosby*, 135 F. App'x 333, 335 (11th Cir. 2005). **Jenkins** does suggest that the BOP is likely to use the NIK test in discipline cases against other inmates charged with possession of narcotics. However, this exception to the mootness doctrine generally requires a showing that the same circumstances



© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

are likely to recur between the same parties, not just that other persons may litigate a similar claim. *See Lane v. Williams*, 455 U.S. 624, 633-34, 102 S. Ct. 1322, 71 L. Ed. 2d 508 (1982); *Burnett v. Kindt*, 780 F.2d 952, 955 n. 8 (11th Cir. 1986).

But even were it otherwise in this context, **Jenkins** also cannot meet the second element of the exception because he has not shown that the BOP's challenged action would normally be so short in duration that it cannot be fully litigated. Generally speaking, if the BOP denies good time credits as a disciplinary sanction, the controversy continues to be a live one for habeas purposes at least so long as the inmate's good time credits are withheld and he remains incarcerated. On its face, that period could extend for many years. As such, it is unsurprising that habeas challenges involving the reliability of NIK tests and other drug tests have been regularly litigated in the federal courts, belying that such claims evade review. *See, e.g., Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 899 n. 3 (5th Cir. 2000); *Peer v. Denham*, 2015 U.S. Dist. LEXIS 127706, 2015 WL 5579654, at *6 (D. Colo. Sept. 23, 2015); *Trusdale v. Antonelli*, 2017 U.S. Dist. LEXIS 107822, 2017 WL 2964732, at *3 (W.D. Okla. May 30, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 106560, 2017 WL 2958625 (W.D. Okla. July 11, 2017); *Bolanos v. Coughlin*, 1993 U.S. Dist. LEXIS 21212, 1993 WL 762112, at *9 (S.D.N.Y. Oct. 15, 1993); *Maciel v. Warden, FCC Coleman-USP I*, 2014 U.S. Dist. LEXIS 96021, 2014 WL 3587504, at *4 (M.D. Fla. July 15, 2014); *Stephens v. Hickey*, 2008 U.S. Dist. LEXIS 4661, 2008 WL 205335, at *5-6 (S.D. Ga. Jan. 23, 2008).

III.

Based on the foregoing, it is **RECOMMENDED** that the BOP's motion to dismiss be **GRANTED** and that the action be **DISMISSED AS MOOT**.

**Notice of Right to Object**

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge. A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

**DONE**, this the 11th day of January, 2018.



© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

/s/ John E. Ott

**John E. Ott**

Chief United States Magistrate Judge

**Footnotes**

1

References to "Doc(s). __" are to the document number(s) of the pleadings, motions, and other materials in the court file as compiled and designated on the docket sheet by the clerk of the court. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

2

As noted in the text, Jenkins has been held in an Illinois county jail since before filing his federal habeas petition. That raises a threshold jurisdictional issue because a habeas petition filed pursuant to 28 U.S.C. § 2241 generally must name the petitioner's immediate custodian as the respondent, *see Rumsfeld v. Padilla*, 542 U.S. 426, 434-36, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004), and the petition must be filed in the federal judicial district where that custodian is located. *Id.* at 442-43. Nonetheless, while Jenkins is held in Illinois, that confinement is merely temporary, for the purpose of his being re-sentenced in the Southern District of Illinois following his successful direct appeal. In such circumstances, Jenkins's immediate custodian for habeas purposes remains the warden of the prison where he is assigned to serve out his federal sentence, which is FCI Talladega. *See United States v. Poole*, 531 F.3d 263, 271-74 (4th Cir. 2008); *Miller v. Hambrick*, 905 F.2d 259, 261-63 (9th Cir. 1990); *Rheuark v. Wade*, 608 F.2d 304, 305-06 (8th Cir. 1979); *Bandy v. United States Att'y Gen.*, 408 F.2d 523 (8th Cir. 1969); *Pelley v. Matthews*, 163 F.2d 700, 700, 82 U.S. App. D.C. 264 (D.C. Cir. 1947); *United States ex rel. Quinn v. Hunter*, 162 F.2d 644, 650-51 (7th Cir. 1947). Accordingly, this court, which is in the district of that permanent confinement, has subject-matter jurisdiction to entertain this action under § 2241(a). *See id.*

3

The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).



© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A p.1

** SIS ADVISORY **
January 18, 2017
"Buprenorphine HCL (Suboxone) Incident Reports"

Federal Bureau of Prisons
Intelligence Section
320 First Street, NW - Room 543
Washington, DC 20534

COMM: [redacted]
FAX:
LAN ID:

Brad Trate, Administrator
Correctional Services Branch

M. Wade Jensen
Operations Intelligence Officer
Intelligence Section

Kevin Schwinn, Chief
Intelligence Section

**TO: Regional Directors/All ROs; BOP-CPD/Assistant Director; Warden/All Insts; SIS/All ROs; Corr Svc/All ROs; SIS/All Insts; Corr Svcs/All Insts; BOP-CPD/SIS; BOP-CPD/SIU; BOP-CPD/CTU; BOP-CPD/PMB Intel**

**<u>PURPOSE</u>: Update Field Test Kits for Buprenorphine HCL (Suboxone) and Clarify Incident Report Writing:**

**<u>DISCUSSION</u>:** This is an update to the SIS Advisory dated September 29, 2015.

The SAFARILAND Company has informed Central Office Intelligence Section of an update to the reported color results when testing for Buprenorphine HCL. In the September 29, 2015 SIS Advisory, the color change in NIK Test U - Methamphetamine Reagent - was reported as BROWN. The color change should have been reported as BURGANDY.

The NIK Polytesting procedure for the detection of Buprenorphine HCL is a combination of A, U, K tests.

NIK Test A - Marquis Reagent - results are purple
NIK Test U - Methamphetamine Reagent - results are **<u>BURGANDY</u>**
NIK Test K - Opiates Reagent - results are purple

It should be noted Heroin and Buprenorphine HCL will result in a similar purple color, but Heroin will change from green to purple while Buprenorphine HCL will go directly to purple. When using NIK Field Tests, staff should only report the test results.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE
This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution, to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a "need to know." It contains information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).




**ACTION REQUESTED**: The Special Investigative Supervisors (SIS) are asked to advise the staff of the information contained in this alert. If a recovered substance is suspected Buprenorphine HCL (Suboxone), it is **preferred** a pharmacist identify the substance as Buprenorphine HCL (Suboxone). The supporting memo from the pharmacist should be attached to the incident report along with photographs of the evidence and no NIK Field Test is necessary. If the recovered substance cannot be positively identified as Buprenorphine HCL (Suboxone) by a pharmacist, staff should treat the substance as a completely unknown narcotic and conduct the appropriate NIK testing sequence. Photographs of the evidence and completed NIK Field Tests should be attached to the incident report.

**REMEMBER:** In Block 11 of the incident report, the substance should be referred to as unknown or unidentified and all NIK Field Test results should be detailed. Example incident reports are attached.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE
This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution, to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a "need to know." It contains information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).

Exhibit B p1



**Chris Liwag - Suboxone related Incident Reports**

| | |
|---|---|
| **From:** | Robert J. Lynn |
| **To:** | Captains WXRO; SIA/SIS LT's; SIS SHOPS |
| **Date:** | 1/23/2018 12:02 PM |
| **Subject:** | Suboxone related Incident Reports |
| **CC:** | WXR CORR SERV |
| **Attachments:** | NIK IR2.pdf; NIKSISAdvisory (Jan 2017).pdf; NIK IR1.pdf; NIK IR3.pdf; CSV-0660-VXX.pdf |

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. .If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified, identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on <u>one</u> team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug

Exhibit B p. 2



problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: [redacted]

"Use your Tools and Resources to ensure success."

Exhibit B-1 p-1



Internal emails !!

**Chris Liwag - Fwd: Follow up - Suboxone related Incident Reports**

From: Robert J. Lynn
To: Hernandez Ismael
Date: 1/25/2018 9:39 AM
Subject: Fwd: Follow up - Suboxone related Incident Reports

Can you please send this out to your DHOs as a follow up to your email from yesterday. Thanks

>>> Robert J. Lynn 1/24/2018 9:59 AM >>>
As a follow up conversation with Central Office, I would like to clarify that the first preferred method is to have a pharmacist or any Subject Matter Expert on the identification of medication such as a doctor or other medical staff verify the item is Buprenorphine HCL (Suboxone). They must submit a signed memorandum verifying their identification of the drug, which of course is attached to the IR. Good rule of thumb is if there are identifiers on the strip it should be taken to the SME. However, if the strip is cut up into several pieces and the SME can't identify the item as suboxone, then the NIK testing should take place as addressed below.

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive.
Stockton, Ca
Office: [redacted]

"Use your Tools and Resources to ensure success."

>>> Robert J. Lynn 1/23/2018 12:02 PM >>>

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified,

Exhibit B p. 2



identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: [redacted]

"Use your Tools and Resources to ensure success."

*PRESS FIRMLY TO SEAL*

SUSTAINABLE FORESTRY INITIATIVE
Certified Sourcing
www.sfiprogram.org
SFI-00061

how2recycle.info
PAPER POUCH

UNITED STATES POSTAL SERVICE®

PRIC
MA

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply
- USPS Tracking® service included for domestic and many internati
- Limited international insurance.**
- When used internationally, a customs declaration form is requirec

*Insurance does not cover certain items. For details regarding claims exclusions see Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations

Exhibit C

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

TRACKED ■ INSURED

To schedule free
scan the

quadient
PRIORITY MAIL
IMI
$020.02 0
12/11/2025 ZIP 85255
043M31263710
US POSTAGE

PRIORITY MAIL

USPS CERTIFIED MAIL
9202 8901 4298 0437 3726 60

00130163440000011
Antwon Jenkins 09778-025
FCI - Forrest City Low
P.O. BOX 9000
FORREST CITY AR 72336
USA

Exhibit D

2-8-17

Dear Regional Office, I am respectfully seeking permission to submit re: 884445-R3 an addendum of exibits, that were recieved after y initial filing. These exibits will support my claim that (1) NIK test unreliable and prohibits the testing of "brown paper" and (2) BOP staff are administering it wrong, resulting in false positives.

[signature]

Case 1:20-cv-01815-CLM-SGC Document 17-2 Filed 11/26/21 Page 27 of 39

Exhibit D-1

TRULINCS 09778025 - JENKINS, ANTWON D - Unit: TDG-S-A

---

FROM: 09778025
TO: Warden
SUBJECT: ***Request to Staff*** JENKINS, ANTWON, Reg# 09778025, TDG-S-A
DATE: 12/16/2016 03:06:38 PM

To: mrs Clay
Inmate Work Assignment: unicor

att. Mrs. Clay. i was in the SHU from November 1,2016 until December 14,2016. While in the SHU we all had numerous complaints about the incoming and outgoing mail. My problem is I filed an Appeal(BP-10) on November 22, 2016. And i have yet to recieve a responds from Region verfiying that they at least recieved it. I witnessed other inmates file BP-10s in the second week of Demember and get a responds the next week. I am simply asking if u would look into the date that my BP-10 was mailed from here to region. thank you

Case 1:20-cv-01815-CLM-SGC Document 17-2 Filed 11/25/21 Page 27 of 89

Exhibit D-2

TRULINCS 09778025 - JENKINS, ANTWON D - Unit: TDG-S-A

---

FROM: 09778025
TO: Warden
SUBJECT: ***Request to Staff*** JENKINS, ANTWON, Reg# 09778025, TDG-S-A
DATE: 12/16/2016 03:06:38 PM

To: mrs Clay
Inmate Work Assignment: unicor

att. Mrs. Clay. i was in the SHU from November 1,2016 until December 14,2016. While in the SHU we all had numerous complaints about the incoming and outgoing mail. My problem is I filed an Appeal(BP-10) on November 22, 2016. And i have yet to recieve a responds from Region verfiying that they at least recieved it. I witnessed other inmates file BP-10s in the second week of Demember and get a responds the next week. I am simply asking if u would look into the date that my BP-10 was mailed from here to region. thank you

TRULINCS 09778025 - JENKINS, ANTWON D - Unit: TDG-S-A Exhibit D-2 p.1

FROM: 09778025
TO: Warden
SUBJECT: ***Request to Staff*** JENKINS, ANTWON, Reg# 09778025, TDG-S-A
DATE: 02/10/2017 09:45:42 PM

To: Mrs. Clay
Inmate Work Assignment: unicor

Att. Mrs. Clay: I repectfully would like to bring something to your attention. On Nov. 1,2016 through Dec. 14,2016 (45 Days) I was placed in the SHU for Poss. of Narcotics (Amphetamines). I have spoken with you about this subject on numerous occasions. I spoke with you while i was in the SHU and I emailed you once I was released from the SHU.(see inmate email to Warden (Dec. 16,2016 and email to Ass.Warden of Programs (Dec.20,2016) While in the SHU you informed me that you were familar with my circumstances. Your responds was"Oh you are the guy with the valsoline paper". I was found gulity of a 113 series saction. I have maintained that the (Brown piece of paper) that I possessed contained "Valsoline". At my DHO hearong I called 5 witnesses that testified to these facts. I was still found guilty and punished anyway. I currently have and Bp-10 at Region. I have obtained the "Identidrug Polytesting Procedures and the NIK test(the test used by SIS) instructions. These documents reveal that when using the NIK test "the chioce of paper is critical.Unscented,uncolored filtered paper is ideal. NEVER use BROWN PAPER,HAND TOWELS or NEWSPRINT" The instructions also reveal that BOP staff are not administering the test properly(With Amphetamines u must use Test A,U, then proceed to test W.) They stopped at test U in my case. And the instructions reveal that if the end results(color) are red and purple(as on my case) the test is not sufficient. The test also requires that the officer be cerified by Sarariland to adminster the test and results should be sent to a qualified crime lab specialist to confirm results. I would like to ask for yor approval to review and place on hold all of the past and pending sanctions issued from NIK test results. We are being subjected to unjust,cruel and unusual punishment as a result of this flawed test and SIS's improperly admistering of this test. This is causing us "ATYPICAL AND SIGNIFICANT HARDSHIPS" in our everyday prison life. I am currently sentenced to 28 years and i am 4 and a half years in on that sentence. I have to federal appeals in court and these shoes dont look good to for the judge to see

Case 1:20-cv-01816-CLM-SGC Document 17-2 Filed 11/26/21 Page 29 of 89

Exhibit D-2 p. 2

TRULINCS 09778025 - JENKINS, ANTWON D - Unit: TDG-S-A

---

FROM: 09778025
TO: AW Programs
SUBJECT: ***Request to Staff*** JENKINS, ANTWON, Reg# 09778025, TDG-S-A
DATE: 12/20/2016 06:24:32 AM

To: AW
Inmate Work Assignment: NONE

ATT AW. I WAS CURRENTLY IN THE SHU FROM NOV.1 2016 UNTIL DEC. 14,2016. WHILE BACK THERE I HAD NUMEROUS PRBLEMS WITH MY MAIL NEVER BEING SENT OUT. I WOULD LIKE TO ADDRESS ONE IMPORTANT PEICE OF MAIL THAT WAS NEVER SENT OUT. ON NOV.22 2016 AFTER NUMEROUS ATTEMPTS TO RECIEVE A BP-10 FROM MY COUNSLER AFTER THE CAPTAIN,NUMEROUS PRISON OFFICALS AND MY LAYWER CALLED UP HERE I RECIEVED ONE(BP-10). ON THAT DAY I ASK MY LAYWER TO SPEAK WITH MY COUNSLER AND REQUEST THAT I MAY HAVE COPIES OF MY APPEAL AND BP-10. AFTER SOME RESISTANCE I FINALLY RECIEVED COPIES. THAT SAME DAY AT 5:02 PM I HANDED OFFICER N. FARMER MY BP-10 TO PLACE IN THE MAIL.AS OF TODAY I HAVE YET TO RECIEVE AT LEAST A LETTER FROM THE REGION VERIFYING THAT THEY RECIEVED MY BP-10. I HAVE WITNESSED OTHER INMATES WHO FILED THEIR BP-10S IN DEC RECIEVE LETTERS FROMM REGION SAYING THAT THEY RECIEVED THEIR BP-10. THIS IS WERE MY CONCERN COMES IN. I ALSO SEN ANOTHER LETTER FROM THE SHU ON DEC. 12 ,2016 ASKING THE REGION HAD THEY RECIEVED MY BP-10. I HAVE NOT HEARD ANY THING YET. I AM CONCERNED BECAUSE MY DEAD LINE TO FILE WAS UP ON DEC.7 AND IF MY BP 10 DID NO GET THERE THEN I CAN NOT APPEAL. I FILED MY BP 10 IN A TIMLEY MANNER. CAN YOU CHECK AND SEE IF MY BP-10 WAS SENT OUT ON NOV. 22 AND IF REGION RECIEVED IT? THANK YOU

TRULINCS 09778025 - JENKINS, ANTWON D - Unit: TDG-S-A Exhibit D-2 p. 3

---

FROM: 09778025
TO: Correctional Services
SUBJECT: ***Request to Staff*** JENKINS, ANTWON, Reg# 09778025, TDG-S-A
DATE: 02/09/2017 09:09:58 PM

To: Capt Watson
Inmate Work Assignment: unicor

Att. Captain Watson. I have spoke with you on numerous occasions on reguards to being found guilty of Poss. of Narcotics. (Amphetamines). As mentioned I was in possession of a (Brown peice of paper) with valsoline on it. I had 5 witnesses to testify to those facts. I have a bp-10 currently pending before the Regional office. I would like to know if i would be able to talk with you about (BOP staff) not adminstering the NIK Polytesting system correctly? I have obtained the Identidrug flow chart and the instructions for the NIK test. The chart and the instructions affirm that is has not been admistering the test properly. And this has resulted in the unjust, cruel, and unusal punishment of inmates.I along with other inmates would like to respectfully, discuss these issues with staff(SIS or whom it may concern) because these unjust sanctions are causing us atypical and significant hardships. I have appeals in Federal court, and this sanction does not look good when a judge is reviewing my pending case. I was sentenced to 28 years in Federal prison. I have been Incarcerated for 4 and a half years.That means that this may be THE CHANCE OF A LIFE TIME. The General Ploytesting Procedures states to"NEVER use broen paper, hand towels, oe newprint" I was found guilty of possessing (Brown paper). The officer tested the (brown paper) and found it to contain Amphetamines, according to the NIK test. The test instructions and NIK polices state that the test results should be subjeted to a qualified scientists in a properly equiped crime lab(4.1.4 General),the NIK test U should be followed up with Test W(when poss. for Amphetamines),and if the results of the test(U) come back red and puple then the test is no good.(as in my case) thank u

Exhibit D-3

**Administrative Remedy No. 884445-A2 AMENDED**
**Part B - Response**

You appeal the November 14, 2016, decision of the Disciplinary Hearing Officer (DHO) regarding Incident Report 2913345, which you were found to have committed the prohibited act of Possession of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, not Prescribed for the Individual by the Medical Staff (Code 113). For relief, you request the incident report be expunged.

Records reflect Incident Report 2913345 was expunged on December 14, 2017. We find no further relief is warranted.

Based on the foregoing, this response is provided for informational purposes.

12/18/17
Date

Ian Connors, Administrator
National Inmate Appeals

Exhibit D-4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTRON D. JENKINS, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Case No. 2:17-CV-1951-AKK-JEO |
| | ) | |
| FEDERAL BUREAU OF PRISONS. | ) | |
| | ) | |
| Respondent. | ) | |

**DECLARATION OF GLENDA DYKES**

I, the undersigned, Glenda Dykes, do hereby make the following declaration, pertinent to the above styled and numbered case.

1. I am currently employed by the Federal Bureau of Prisons, as a Legal Instruments Examiner in the Southeast Regional Office in Atlanta, Georgia. As a part of my duties, I have access to and knowledge of the computer system known as SENTRY, which contains electronic records for tracking inmates in the federal system, including their Discipline records.

2. I have reviewed the discipline records for Petitioner, Antwon D. Jenkins, federal register number 09778-025. According to SENTRY Petitioner's DHO record for incident report #2913345 has been expunged. Petitioner currently has no DHO history on file.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this 18th day of December 18, 2017.

Glenda Dykes
Legal Instruments Examiner
Federal Bureau of Prisons
Southeast Regional Office
Atlanta, Georgia

Exhibit D-5 pg 1

FILED
2021 Nov-26 PM 04:
U.S. DISTRICT COURT
N.D. OF ALABAMA

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008

1. Submit to Appropriate Federal Agency:
C/O Counsel of Regional office

2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.
Antwon Jenkins 09778-025
PO Box 1000
(FCI Talladega)
Talladega AL, 35160

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | 11-27-87 | | 11-1-16 | 6:30 pm |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).
On Nov. 1, 2016, while at F.C.I Talladega, I was found to be possession of brown paper with residue on it. The paper was tested by S.I.S, using a N.I.K drug test. The test "alleged" that it was amphetamine. I placed in the SHU, for 45 days, suffered 2 asthma attacks, and was bitten on the face by a spider. (w/o treatment) After a year this section was expunged on Dec. 14, 2017, 5th and 14th Amend. violation

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).
N/A

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.
I was wrongfully sanctioned for possession of amphetamine. BOP staff are intentionally and willfully administering the NIK drug test, without following the directions. I was placed in the SHU for 45 days. While in the SHU, I suffered 2 asthma attacks, lived in a cell with human waste and bitten by a spider on my face.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Attachment | See Attachment |

RECEIVED JUL 24 2019

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | $400,000 | | $ 400,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] | N/A | 7-17-19 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

# DEFENDANTS

(1) Warden Becky Clay
(2) Assistant Warden M. Joseph
(3) Captain Watson
(4) Lt. Epps
(5) Lt. Statten
(6) SIS Technician W. Hervell
(7) Officer Taylor-Green
(8) Nurse B. Gill
(9) Lt. Saunders (or Sanders)

# ATTACHMENT

On Nov. 1, 2016, I was searched by Officer Taylor-Green. I was in possession of "brown paper" with vaseline on it. I had witnesses with me to verify it. He took the paper to the LT's office and it was tested by SIS Tech. N. Harvell. The test alleged it was amphetamines per the N.I.K drug test. On November 1, 2016, while in the LT's (Epps) office, I was searched and found to be in possession of "brown paper" with vaseline on it by Officer Saunders (or Sanders). (he is a Lt now at FCI Talladega). Lt Epps, over my objection threw it in the trash. I was placed in the SHU, and found guilty of the shot. The SHU, LT Statten, would not investigate it and would laugh and say "You shouldn't be a drug dealer". While in and out of the SHU, I talked to Warden Berry Clay, Ass. Warden M. Joseph, and Captain Watson, about BOP staff's (SIS Tech. W. Harvell) intentionally placing me in the SHU, without following the NIK drug test instructions. All of the Defendants refused to investigate. While in the SHU, I had 2 asthma attacks, was bitten by a spider on my face, had staff infection, and was forced to live in a cell without flushing toilets. Human waste would be in the toilet for days. I spoke with RN B. Gill, and she observed the spider bite and staff infection, but did nothing. On Dec. 18, 2017, my shot was expunged. See Exhibits

This amounts to a Due Process violation 5th Amend. and Cruel and Unusual Punishment 8th Amend.

Exhibit E

# INSTRUCTIONS ON USE

**For One Ampoule Tests (A, B I, K, O, W)** - Remove the clip and insert sample suspect material. Reseal with clip and tap gently on a hard surface to drive the sample to the bottom of the pouch. With the printed side of the pouch facing you, break the ampoule by squeezing the center of the ampoule with the tips of the thumb and forefinger. Agitate gently and observe the color or color changes. NOTE: In Test O, if sampling a liquid substance, place 2 small drops of liquid in the pouch using the included disposable pipette (dropper).

**For Two Ampoule Tests (C, H, L, N, Q, R, T)** - Remove the clip and insert sample suspect material. Reseal with clip and tap gently on a hard surface to drive the sample to the bottom of the pouch. With the printed side of the pouch facing you, break the ampoules from left to right. Break by squeezing the center of the ampoule with the tips of the thumb and forefinger. Break the left ampoule and agitate. Observe any color change, although some of these tests will not produce a color at this point. Break the right ampoule and agitate, observing the color or color changes.

**For Three Ampoule Tests (D, E, G, J, M, P, U)** - Remove the clip and insert sample suspect material. Reseal with clip and tap gently on a hard surface to drive the sample to the bottom of the pouch. With the printed side of the pouch facing you, break the ampoules from left to right. Break by squeezing the center of the ampoule with the tips of the thumb and forefinger. Break the left ampoule and agitate. Observe any color change, although some of these tests will not produce a color at this point. Break the middle ampoule and agitate. Observe any color change, although some of these tests will not produce a color at this point. Break the right ampoule and agitate, observing the color or color changes.

| TEST | DESCRIPTION | POSITIVE RESULTS |
|---|---|---|
| Test A | **Marquis Reagent** - This reagent system presumptively identifies Opium alkaloids, Heroin and Amphetamine type compounds and as a general screening agent for other drugs. | A rapidly developing purple or blue-violet color indicates Opium alkaloids (Morphine or Codeine) or Heroin. An immediate orange color rapidly turning to a brown color indicates Amphetamine-Type compounds. Refer to the Polytesting Chart for other color results. |
| Test B | **Nitric Acid Reagent** - Secondary screening test for the confirmation of Opiates (Morphine, Codeine or Heroin) and Amphetamine-type compound as well as a general screening test for other drugs. | A yellow color slowly changing to a light green color indicates Heroin. An orange color changing very rapidly to red then slowly to a yellow color indicates Morphine. An orange color changing slowly to yellow indicates Codeine. |
| Test C | **Modified Dille-Koppanyi Reagent** - A test for Barbiturates. Used after no change result in Test A and Test G, and an orange result in Test I. | No color change after breaking the first ampoule and a lavender color after breaking the second ampoule. |
| Test D | **Modified Ehrlich's Reagent** - A test for LSD (Lysergic Acid Diethylamide). Used after positive results in Test A and B. | No color change after breaking the first ampoule and a lavender result after breaking the second and third ampoules. |
| Test E | **Duquenois-Levine Reagent** - Standalone test for Marijuana, Hashish and "Hash Oil". | No color change after breaking the first ampoule, a dark blue or violet after breaking the second ampoule and a grey upper layer over a violet layer upon breaking the third ampoule. |
| Test F | Used upon completion of each test to ensure that the strong acids and bases contained in many tests won't pose a danger to personnel. Each pouch includes enough acid neutralizer for five individual NIK tests. | N/A |
| Test G | **Modified Scott Reagent** - A test for Cocaine, Crack or Free Base. | Blue or pink with blue speckles after breaking the first ampoule, a pink result after breaking the second ampoule and a pink layer over a blue layer after breaking the third ampoule. |
| Test H | A test for Methadone. | No color change after breaking the first ampoule and a resulting blue color after breaking the second ampoule. Test H should only be used after positive results from Test A, G, I and C. |
| Test I | **Lieberman's Reagent** - For the general screening of PMA, Ketamine, Barbiturates and Methadone. | Used after brown result in Test A or clear result in Test A followed by no change in Test G. |
| Test J | A test for PCP (Phencyclidine). Test J should be used after no change results from Tests A, G, I and W. | No color change after breaking the first ampoule, followed by a blue or pink with blue speckled result after the second and third ampoules. |
| Test K | A test for Heroin, Black Tar, Codeine and Morphine. Easier to distinguish between the four Opiates than using Test B. Can also be used to screen out Methapyrilene and Propoxyphene. | An immediate green color, changing to purple indicates Heroin. An immediate blue-green color, changing to a gray color indicates Morphine. An immediate stable blue color indicates Codeine. |
| Test L | **Modified Mecke's Reagent** - A test for Heroin, including White, Brown and Black Tar, and MDMA (Ecstasy), as well as certain dye combinations designed to give false positives with Test A. | A purple color after breaking the first ampoule indicates Ecstasy (MDMA). A green color after breaking the second ampoule that intensifies with prolonged agitation indicates Heroin. |
| Test M | A test for Methaqualone (Quaaludes, Sopor Somnafac, Opitimil and Parest). | A flash blue or solid blue color indicates Methaqualone, but Methadone and PCP are potential false positives in this test. To eliminate these, use Test H for Methadone and Test J for PCP. |
| Test N | A test for Pentazocine (Talwin® Nx or Talacen) as well as Oxycodone. | A slowly developing purple color after breaking the first ampule followed by an immediate yellow color after breaking the second ampule. |
| Test O | A test for GHB (Gamma-Hydroxybutyrate). Used after no change results from Tests A, G, I, W, J and R. | A rapidly developing green from amber (natural color) indicates GHB. |
| Test P | A test for Propoxyphene (Darvon®). | A pink color after breaking the first ampoule followed by a blue color after breaking the second ampoule and remaining blue after breaking the third ampule indicates Propoxyphene. |
| Test Q | A test for Ephedrine and Pseudoephedrine. | No color change after breaking the first ampoule and a purple or violet color after breaking the second ampoule. |
| Test R | A test for Valium (Diazepam), Rohypnol (Flunitrazepam) and Methcathinone. | A lavender color after breaking all ampoules. |
| Test T | **Morris Reagent** - A test for Ketamine. | Lavender color indicates Ketamine. A blue/green color is a negative. |
| Test U | A test for Methamphetamine and MDMA (Ecstacy). | An immediate dark blue color indicates Methamphetamine or MDMA (Ecstasy). If any other color develops, proceed to Test A and continue Polytesting as instructed in the Polytesting procedures. |
| Test W | **Mandelin Reagent** - A test for Amphetamines and Methadone, as well as screening for PMA and Ketamine in conjunction with Test I. | A rapidly developing blue color indicates the presence of Methadone. An immediate olive green color indicates the presence of Amphetamines. |

XXXXXXX - REV0510

© Safariland

# Test U for Methamphetamine and MDMA (Ecstasy)

- The first two ampoules do not give a color reaction, but merely put the sample in the proper chemical order to produce a color reaction with the third ampoule.

- This test does not differentiate between MDMA and Methamphetamine. Test A must be used to provide that clarification. Test U tests for the presence of a chemical group called secondary amines. Both of these drugs fall into this chemical group. You may encounter other chemicals that are also in this group in the field. Test A is the only way to provide a better screening for the presence or non-presence of illicit drugs.



# Test U for Methamphetamine and MDMA (Ecstasy)



- It should also be noted that Test U will turn a burgundy color all by itself when the ampoules are broken with substance placed in the pouch. This is the nature of the chemicals.



- The logic to be used here is that Test A (if it shifts from Orange to Brown) tells us that the substance is presumptively an Amphetamine-type compound. Test U then tells us if there is an indication of Amphetamine (burgundy) or Methamphetamine (dark blue) present. By not turning dark blue and staying burgundy, this is considered a negative reaction for the presence of Methamphetamine and therefore, by default, it indicates Amphetamine.

ANTWON D. JENKINS
09778-025
PO BOX 9000
FCC FOREST CITY LOW
FOREST CITY, AR 72336




LEGAL MAIL

⇔09778-025⇔
Clerk Us Dist Court
Norhern Dist of Alabama
1729 Fifth Ave
Birmingham, AL 35203
United States

**SECURITY**

JAN 26 2026

U.S. DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA